IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRIS RECTOR and
MICHELLE RECTOR                                                                                PLAINTIFFS

v.                                            Case No. 4:20-cv-1025-KGB

MARTIN "SONNY" CLIFFORD,
individually and in his official capacity as
Van Buren County Sheriff's Deputy,
LUCAS EMBERTON, KIM MONGOLD,
CRYSTAL GARNER, VAN BUREN
COUNTY VETERINARY CLINIC, INC.,
and CITY OF HEBER SPRINGS                                                                     DEFENDANTS

**OPINION AND ORDER**

Before the Court is plaintiffs Chris Rector and Michelle Rector's motion for partial summary judgment (Dkt. No. 36). Separate defendants Martin "Sonny" Clifford, in his individual capacity ("Mr. Clifford") and Kim Mongold responded in opposition (Dkt. No. 44), and plaintiffs replied (Dkt. No. 46). Separate defendants Martin "Sonny" Clifford, in his official capacity as Van Buren County Sheriff's Deputy, and Van Buren County Sheriff Lucas Emberton (collectively, "County Defendants")[1] responded in opposition (Dkt. No. 49). Separate defendant City of Heber Springs, Arkansas ("City") also responded in opposition (Dkt. No. 65).[2] For the following reasons, the Court denies plaintiffs' motion for partial summary judgment (Dkt. No. 36).

---

[1] The Court uses the term "County Defendants" in this Order. The Court acknowledges the assertion made by separate defendants Mr. Clifford and Sheriff Emberton that "because multiple official capacity claims against officials and employees of the same entity are legally identical and redundant . . . the Plaintiff has effectively sued only one Separate County Defendant: Van Buren County, Arkansas." (Dkt. No. 49, at 3 (citing *Baker v. Chisom*, 501 F.3d 920 (8th Cir. 2007)).

[2] By prior Order, the Court denied the City's motion to stay consideration of plaintiffs' motion for partial judgment because the Court agrees, as the City acknowledges, that plaintiffs' motion is not directed at the City (Dkt. No. 64). The City represents that "because some paragraphs

I.    **Parties And Claims**

Plaintiffs bring this lawsuit against defendants Mr. Clifford in his individual and official capacity, Sherriff Emberton in his official capacity,[3] Ms. Mongold in her individual capacity, and the City (Dkt. No. 22).[4] Plaintiffs seek compensatory and punitive damages exceeding $2,000,000.000 for a dog bite Ms. Rector suffered from a dog named Silas (*Id.*, at 13).

Plaintiffs' operative complaint contains three counts (Dkt. No. 22). Count I alleges a claim for negligence against Ms. Mongold (*Id.*, ¶¶ 40–46). Count II asserts claims for constitutional violations pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105 *et seq.* ("ACRA") against Mr. Clifford in his official capacity and Sheriff Emberton ("County Defendants") (*Id.*, ¶¶ 41–60). Specifically, plaintiffs allege that the Sheriff's decision to place Silas into service "was a policy decision such that the Sheriff was the final policymaker acting under color of law," and that "[a]t the time he bit Ms. Rector, Silas was being released to go to the bathroom, which was part of Clifford's official duties . . . such that his actions were under color of law." (*Id.*, ¶¶ 48, 51). Plaintiffs further allege:

> 55.    [T]he Sheriffs [sic] policy does not address social contact in the Handler's home and is therefore constitutionally deficient. The failure to promulgate this policy and train Clifford caused Plaintiffs' injuries.
>
> 56.    The Sheriff's decision to ignore Smith's warning, and any other warning, the failure to properly vet Silas and ensure Silas and his handler was

---

in Plaintiffs' Statement of Undisputed Facts relate to the City and/or the time period in which the City had ownership and custody over the police canine, the instant response is limited to addressing said paragraphs." (Dkt. No. 65, ¶ 4).

[3] In their operative complaint, plaintiffs do not specify the capacity in which they are suing Sherriff Emberton (Dkt. No. 22). Therefore, the Court construes plaintiffs' complaint as stating only an official capacity claim against Sheriff Emberton. *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *Rumery v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

[4] On September 2, 2022, the Court dismissed without prejudice plaintiffs' claims against Crystal Garner and the Van Buren Veterinary Clinic, Inc. (Dkt. No. 60).

> appropriately trained amounts to deliberate indifference to the rights of persons with whom the police come into contact.
>
> 57. Sheriff Emberton was deliberately indifferent as to the rights of others in adopting them, such that the failure to hire, train, or supervise reflects a deliberate or conscious choice by the County; and (3) [sic] there was a deficiency in the hiring, training, or supervising procedures [sic] actually caused the Plaintiffs' injury, as herein alleged.

Count III asserts a claim for deliberate indifference pursuant to § 1983 and the ACRA against the City (*Id.*, ¶¶ 61–68).

## II.     Factual Background

The Court draws the following facts, unless otherwise noted, from plaintiffs' statement of undisputed facts and defendants' responses to plaintiffs' statement of undisputed facts (Dkt. Nos. 37, 45, 46, 50, 66). Separate defendants Mr. Clifford and Ms. Mongold asserted additional facts in their response to plaintiffs' statement of undisputed facts (Dkt. No. 45). Plaintiffs replied (Dkt. No. 46). County Defendants adopted and incorporated by reference the additional facts asserted by separate defendants Mr. Clifford and Ms. Mongold (Dkt. No. 50). As highlighted below, most of these facts are in dispute.

Plaintiffs Michelle Rector and Chris Rector are married to each other and are residents of Van Buren County, Arkansas (Dkt. No. 37, ¶ 1). The parties do not dispute that Silas is the dog who bit Ms. Rector (Dkt. Nos. 37, ¶ 2; 45, ¶ 2; 50, ¶ 2). According to plaintiffs, Silas was trained by Tony Smith and Little Rock K-9 Academy to be a drug detection dog (Dkt. No. 37, ¶ 3).[5] Plaintiffs assert that Mr. Smith determined that Silas did not have the temperament to be an apprehension dog (*Id.*, ¶ 4). County Defendants dispute this assertion because "there is no

---

[5] County Defendants deny this statement as to materiality, arguing that neither Tony Smith nor K-9 Academy are current parties and that the referenced training was not personally known or made known to any of the parties prior to the dog bite in question (Dkt. No. 50, ¶ 3). The Court views the evidence in the light most favorable to the non-moving party at this stage.

contemporaneous document or other memorialization of the alleged 'determination' until [Mr. Smith] testified about it as his deposition, after which the case against him was dismissed.'" (Dkt. No. 50, ¶ 4).[6]  The parties agree that Mr. Smith later sold Silas to the City, but the parties dispute whether Mr. Smith sold Silas "to be a drug detection dog." (Dkt. Nos. 37, ¶ 5; 45, ¶ 5; 50, ¶ 5; 66, ¶ 5).

Plaintiffs assert that Mr. Smith heard that the City had purposely attempted to make Silas an apprehension dog using abusive tactics (Dkt. No. 37, ¶ 6).  Separate defendants Mr. Clifford and Ms. Mongold agree that Mr. Smith testified that he was told by Kyle Newby, Silas's former handler, that Mr. Newby intended to use inappropriate tactics to attempt to turn Silas into an apprehension dog, but Mr.Clifford and Ms. Mongold contend that they lack knowledge and information sufficient to admit or deny whether Mr. Smith's testimony is true (Dkt. No. 45, ¶ 6). County Defendants take the position that plaintiffs' assertion consists entirely of inadmissible hearsay and that it is a mischaracterization of the deposition testimony on which it is purportedly based (Dkt. No. 50, ¶ 6).[7]  The City asserts that its "canine handlers never attempted to make Silas

---

[6] County Defendants assert that a trier of fact could easily infer that Mr. Smith's alleged "determination" regarding Silas' temperament "was really just a post hoc rationalization of alleged training or other failures by [Mr. Smith] in an (ultimately successful) attempt to avoid his own personal liability." (Dkt. No. 50, ¶ 4).  County Defendants also deny this statement as to materiality, arguing that neither Tony Smith nor K-9 Academy are current parties and that the referenced "determination" was not personally known or made known to any of the parties prior to the dog bite in question (*Id.*).  The Court views the evidence in the light most favorable to the non-moving party at this stage.

[7] As to County Defendants' hearsay objection, it is well settled that a party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay.  *See, e.g.*, *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013).  However, the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it could be presented at trial in an admissible form.  *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012).  The hearsay objection is overruled.  The Court acknowledges the objection that this summary misstates the deposition testimony; the Court will consider the actual deposition testimony.

mean, nor did they do anything to interfere with or corrupt Mr. Smith's training." (Dkt. No. 66, ¶ 6).

The parties dispute whether Silas was a vicious dog in March 2019 (Dkt. Nos. 37, ¶ 7; 45, ¶ 7; 50, ¶ 7; 66, ¶ 7). The parties further dispute whether Mr. Smith warned City law enforcement that Silas was dangerous (Dkt. Nos. 37, ¶ 8; 45, ¶ 8; 50, ¶ 8; 66, ¶ 8).

It is undisputed that Silas bit Mr. Clifford on the day Mr. Clifford picked up Silas from the City (Dkt. Nos. 37, ¶ 9; 45, ¶ 9; 50, ¶ 9). According to Mr. Clifford and Ms. Mongold, the bite happened because Mr. Clifford had to reach into Silas's mouth to adjust a muzzle and leash that had become mispositioned (Dkt. No. 45, ¶ 9). County Defendants maintain that there is no evidence in the record that the bite caused any injury to Mr. Clifford (Dkt. No. 50, ¶ 9).

The parties agree that the County Sheriff assigned the task of acquiring Silas to Mr. Clifford, but the extent to which the County Sheriff assigned the task of training Silas to Mr. Clifford is disputed (Dkt. No. 37, ¶ 10; 45, ¶ 10; 50, ¶ 10). County Defendants take the position that substantial training had already occurred and was recertified by an officer with the Conway Police Department (Dkt. No. 50, ¶ 10).

Plaintiffs assert that the County Sheriff knew that Silas had non-commanded bites with his handler before Ms. Rector was bitten by Silas (Dkt. Nos. 37, ¶ 11; 45, ¶ 11). Separate defendants Mr. Clifford and Ms. Mongold agree with this assertion, while County Defendants deny that the County Sheriff knew that Silas had non-commanded bites with his handler before Ms. Rector was bitten (Dkt. No. 50, ¶ 11). County Defendants also maintain that there is nothing in the record to indicate that any of the alleged bites caused any injury or were unproved and/or unjustified (Dkt. No. 50, ¶ 11).

Plaintiffs assert that Silas had bitten his current and former handler on several occasions, as well as other members of the City Police Department and Mr. Clifford (Dkt. Nos. 37, ¶ 12). All defendants dispute this assertion; they submit that the record testimony reflects that there had been only two instances where Silas had bitten his handlers (Dkt. Nos. 45, ¶ 12; 50, ¶ 12; 66, ¶ 12). County Defendants also maintain that there is nothing in the record to indicate that any of the alleged bites caused any injury or were unproved and/or unjustified (Dkt. No. 50, ¶ 12).

The parties dispute whether the City Police Department decided Silas was too dangerous to be a police dog in the City and, thereafter, transferred Silas to the County in March 2019 (Dkt. Nos. 37, ¶ 13; 45; ¶ 13; 50, ¶ 13; 66, ¶ 13). According to the City, Silas was re-homed to the County on February 28, 2019, because the City's K-9 program ended (Dkt. No. 66, ¶ 13).

Plaintiffs assert that Mr. Clifford told the County Sheriff what he had learned from the City (Dkt. No. 37, ¶ 14). Separate defendants Mr. Clifford and Ms. Mongold admit that Mr. Clifford relayed his conversation with Levi Buress—wherein Mr. Buress reported to Mr. Clifford that the City had a narcotics dog that they wanted to "move off somewhere else," and when asked about prior issues, Mr. Buress reported that there had been two instances where Silas had bitten his handlers—to the County Sheriff (Dkt. No. 45, ¶¶ 13–14). County Defendants deny plaintiffs' assertion (Dkt. No. 50, ¶ 14).

The parties do not dispute that the County veterinarian prescribed Trazadone off-label to Silas, but County Defendants assert that there is no evidence that this fact was conveyed to the County Sheriff (Dkt. Nos. 37, ¶ 15; 45, ¶ 15; 50; ¶ 15).

Separate defendants Mr. Clifford and Ms. Mongold and plaintiffs agree on certain facts leading up to and surrounding the dog bite.[8] On the day of the dog bite, plaintiffs stopped by Mr. Clifford and Ms. Mongold's house because plaintiffs had gotten a new truck and were in the area (Dkt. Nos. 45, ¶ 16; 46, at 8). They all went for a drive, stopped at a liquor store, and went to dinner (Dkt. Nos. 45, ¶ 17; 46, at 8). Plaintiffs then decided to return to Mr. Clifford and Ms. Mongold's home for a bonfire (Dkt. Nos. 45, ¶ 18; 46, at 8). As Mr. Clifford and Mr. Rector began building a bonfire, Mr. Clifford asked Ms. Mongold to let the dogs out (Dkt. Nos. 45, ¶ 19; 46, at 8).

According to separate defendants Mr. Clifford and Ms. Mongold, plaintiffs were informed of Silas's history, "being specifically told that he had bitten two of his handlers in the past." (Dkt. No. 45, ¶ 20). Plaintiffs admit that Ms. Mongold told Ms. Rector that Silas had bit handlers "because they were mistreating him." (Dkt. No. 46, at 8). However, plaintiffs maintain that "Ms. Mongold led Ms. Rector to believe that these incidents were because Silas was defending himself, not that he had anger issues." (*Id.*, at 8–9).

Before taking Silas outside to use the restroom, Ms. Mongold told plaintiffs that Silas needed to be let out to go to the bathroom, but that plaintiffs could stay in their vehicle if they preferred (Dkt. Nos. 45, ¶ 21; 46, at 9). According to separate defendants Mr. Clifford and Ms. Mongold, Ms. Rector said she wanted to meet Silas, and she walked up to him while he was leashed (Dkt. No. 45, ¶ 22). Plaintiffs agree that Ms. Rector said she would like to meet Silas, but deny

---

[8] County Defendants adopt and incorporate by reference, as if set forth word for word, the additional facts asserted by separate defendants Mr. Clifford and Ms. Mongold (Dkt. No. 50, ¶ 16).

7

that Ms. Rector "initiated contact with Silas rather than invitation to pet him from either Ms. Mongold or Mr. Clifford." (Dkt. No. 46, at 9).[9]

Ms. Rector was petting Silas, and then she stopped petting him and left her hand on top of Silas's head (Dkt. Nos. 45, ¶ 23; 46, at 9). Separate defendants Mr. Clifford and Ms. Mongold assert that Silas "perceived this as a position of dominance, which led to him biting Ms. Rector on her right tricep." (Dkt. No. 45, ¶ 24).[10] Separate defendants Mr. Clifford and Ms. Mongold further assert that Ms. Rector's own negligence contributed to her injury (*Id.*, ¶ 25).

### III. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to the entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable fact finder to return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence

---

[9] Plaintiffs assert that Ms. Mongold submitted a self-serving affidavit insufficient to defeat summary judgment, citing *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (Dkt. No. 46, at 9). The Court may discount a party's self-serving affidavit or deposition testimony as a matter of law where it clearly contradicts the party's earlier testimony under oath and where the party offers no explanation for the inconsistencies. *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 474 (8th Cir. 2010); *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1126 (8th Cir. 2008). There is insufficient information in the record evidence before the Court for the Court to discount this as a self-serving affidavit; the objection is overruled.

[10] Plaintiffs maintain that this statement by Mr. Clifford, and the statement that Ms. Rector's own negligence contributed to her injury, are "predicated on a statement of an unknown person to Mr. Clifford," citing *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010). This is a hearsay objection. It is well settled that a party may not defeat a motion for summary judgment by relying solely on inadmissible hearsay. *See, e.g.*, *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 706 F.3d 888, 900 (8th Cir. 2013). However, the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it could be presented at trial in an admissible form. *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). The objection is overruled.

8

of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323; *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586-87). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

V.   **Discussion**

Plaintiffs move for partial summary judgment on four narrow issues: (1) whether the Sheriff's decision to employ Silas as a K-9 police officer was under color of law; (2) whether Mr. Clifford was acting under color of law when he took care of Silas's dietary and exercise needs; (3) whether Silas was a vicious dog, as contemplated by the Arkansas Model Jury Instructions ("AMI"); and (4) whether Ms. Mongold was negligent (Dkt. No. 36). Separate defendants Mr. Clifford and Ms. Mongold, County Defendants, and the City all filed responses opposing plaintiffs' motion for partial summary judgment (Dkt. Nos. 44, 49, 65).

9

At this stage of the litigation on the record before it, the Court determines that plaintiffs are not entitled to judgment as a matter of law on any of these issues. Viewing the record evidence in the light most favorable to defendants, the Court determines that there are genuine disputes of material fact that preclude partial summary judgment. Below, the Court addresses each of the issues identified in plaintiffs' motion.

### A. Color Of Law

Plaintiffs assert that they are entitled to partial summary judgment on the issue of whether certain alleged actions relevant to their claims case were undertaken under color of state law (Dkt. No. 36). Specifically, plaintiffs assert that the Sheriff's decision to employ Silas as a K-9 police officer was under color of law and that Mr. Clifford was acting under color of law when he took care of Silas's dietary and exercise needs (*Id.*).

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment in sought." Fed. R. Civ. P. 56(a). The Court understands plaintiffs to move for summary judgment on certain color of law issues related to the § 1983 and ACRA claims against County Defendants asserted in Count II of their operative complaint (Dkt No. 22, ¶¶ 41–60).

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011). "[A] public employee acts under color of law when he '[e]xercise[s] power possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state law." *Johnson v. Phillips*, 664 F.3d 232, 239–40 (8th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). However, "[a]cts of officers in the ambit of their personal pursuits are plainly excluded" from the scope of § 1983 liability. *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)).

The Court determines that the color of law questions plaintiffs present are not ripe for this Court's decision. As County Defendants argue, "[p]laintiffs' attempt to divorce the 'state action' requirement from the other elements of their section 1983 claim is invalid and creates an impossible question for the Court." (Dkt. No. 49, at 3). Plaintiffs request an isolated ruling as to whether the Sheriff's decision to employ Silas as a K-9 police officer was under color of law, and whether Mr. Clifford was acting under color of law when he took care of Silas's dietary and exercise needs. To prevail on their claims, plaintiffs must show that this alleged conduct, even taken under color of law, "deprived the plaintiff of a constitutionally protected federal right." *Van Zee*, 630 F.3d at 1128.

At this juncture, plaintiffs have offered no proof or argument as to specific constitutional violations that allegedly correspond with the Sheriff's decision to employ Silas as a K-9 police officer or Mr. Clifford's caring for Silas's dietary and exercise needs. This places the Court in the untenable position of being asked to render an advisory opinion based on partial proof. *See, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 88 (1968) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions."). Further, there are disputed issues of material fact in the record evidence that preclude this Court from making the determination plaintiffs seek (*see* Dkt. No. 49, at 6). Therefore, the Court denies plaintiffs' motion for partial summary judgment on the issue of color of law.

B.  **Strict Liability**

Plaintiffs also assert that they are entitled to summary judgment on the issue of whether Silas was a vicious dog, as contemplated by AMI 1602[11] (Dkt. No. 36). According to plaintiffs, "Silas, as a police dog with a documented history of un-commanded bites, is the epitome of a dangerous dog," and therefore plaintiffs "should not be required to prove that which is obvious." (Dkt. No. 38, at 8).

Separate defendants Mr. Clifford and Ms. Mongold argue that "whether Silas was a vicious dog, and therefore, whether strict liability is even applicable, requires intensive factual discussion, and therefore, it is a question that should be left to the jury." (Dkt. No. 44, at 6). As a threshold matter, separate defendants Mr. Clifford and Ms. Mongold dispute whether Silas qualifies as a "domestic animal," as contemplated AMI 1602 and Arkansas law (*Id.*, at 3). Separate defendants Mr. Clifford and Ms. Mongold also point to "substantial fact questions" regarding whether Silas should be considered "vicious," as plaintiffs contend, including the undisputed fact that Silas's only bites before the incident with Ms. Rector involved prior handlers,[12] and that the circumstances surrounding those prior bites remain unknown (*Id.*, at 5). Further, separate defendants Mr. Clifford and Ms. Mongold contend that substantial fact questions remain as to whether Ms.

---

[11] Plaintiffs erroneously refer to AMI 1601 in their motion, but from the context, the Court understands the intended reference to be AMI 1602. AMI 1602 states:

> A person who keeps *[a wild animal][a domestic animal with knowledge of its dangerous tendencies]* [other dangerous animal] does so at *(his)(her)* own risk and is liable for *[injuries][and][damage]* caused by the animal [but the injured person's right to recover damages may be diminished or barred by *(his)(her)* own fault].

Ark. Model Jury Instr., Civil AMI 1602.

[12] The parties dispute the number of times Silas had bitten his handlers prior to the incident with Ms. Rector (Dkt. Nos. 37, ¶ 12; 45, ¶ 12; 50, ¶ 12; 66, ¶ 12).

Mongold—who was living with Silas at the time of the incident— had the requisite knowledge of Silas's alleged dangerous propensities (*Id.*, at 5–6).

This Court agrees with separate defendants Mr. Clifford and Ms. Mongold's assessment and finds that, on the record evidence before the Court, there are genuine issues of material fact that preclude the Court granting summary judgment in favor of plaintiffs on this point. Assessing the weight and credibility to be given to this conflicting record evidence are not for the Court to decide at this stage.

For these reasons, the Court denies plaintiffs' motion for partial summary judgment on the issue of strict liability.

### C. Negligence

Finally, plaintiffs assert that they are entitled to summary judgment on the issue of whether Ms. Mongold was negligent (Dkt. No. 36). According to plaintiffs, Ms. Mongold had a duty to use ordinary care to keep Silas from "running at large" when she knew or reasonably should know that Silas was likely to cause injury or damage to others (Dkt. No. 38, at 8).

The essential elements of a cause of action under Arkansas law are "that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." *Duran v. Sw. Arkansas Elec. Coop Corp.*, 537 S.W. 3d 722, 726 (2018). Plaintiffs must meet their burden of proof as to each of these elements.

The record before the Court reveals unresolved issues of material fact as to whether Ms. Mongold had a duty to keep to Silas from "running at large" and whether Silas was actually "running at large," as plaintiffs contend. Further, separate defendants Mr. Clifford and Ms. Mongold argue that Ms. Rector's own negligence is at issue.

On the record evidence before the Court, there are genuine issues of material fact in dispute as to whether Ms. Mongold was negligent that preclude this Court from granting summary judgment in favor of plaintiffs on this point.

### VI. Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion for partial summary judgment (Dkt. No. 36).

It is so ordered this 29th day of September, 2022.

_____
Kristine G. Baker
United States District Judge